IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:24-cv-00192 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STANLEY L. ALEXANDER, | ) | |
| RUTH A. ALEXANDER, | ) | |
| ANNA E. HALLER *f/k/a* | ) | |
| ANNA E. ALEXANDER, | ) | |
| ASSOCIATED ENTERPRISES LTD., | ) | |
| STATE OF OHIO, | ) | |
| TREASURER OF WARREN | ) | |
| COUNTY, OHIO, and | ) | |
| TREASURER OF MONTGOMERY | ) | |
| COUNTY, OHIO, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The United States of America, at the direction of a delegate of the Attorney General and with the authorization of a delegate of the Secretary of the Treasury, pursuant to 26 U.S.C. § 7401, brings this civil action to (1) reduce to judgment unpaid federal tax liabilities owed by Stanley L. Alexander and Ruth A. Alexander; and (2) enforce the federal tax liens against certain real properties titled in the name of Anna E. Alexander. For its complaint, the United States alleges as follows:

### JURISDICTION, PARTIES, AND PROPERTIES

1. The district court has jurisdiction pursuant to 26 U.S.C. §§ 7402(a) and 7403, and 28 U.S.C. §§ 1331, 1340, and 1345.

2. The defendant Stanley L. Alexander resides in Warren County, Ohio, within the

jurisdiction of this Court.

    3.    The defendant Ruth A. Alexander resides in Warren County, Ohio, within the jurisdiction of this Court.

    4.    The defendant Anna E. Haller *f/k/a* Anna E. Alexander is joined as a party because she may have a lien or claim an interest in the real properties described below.

    5.    Defendant Associated Enterprises Ltd. is joined as a party because it may have a lien or claim an interest in the residential real property described below.

    6.    Defendant State of Ohio is joined as a party because it may have a lien or claim an interest in the properties described below.

    7.    Defendant Treasurer of Warren County, Ohio, is joined as a party because, as the local taxing authority, it may have a lien or claim an interest in the residential real property described below and to place it on notice of this Court's jurisdiction over that property such that any local tax liens that have priority over federal tax liens under 26 U.S.C. § 6323(b)(6) will be satisfied in a judicial sale under this Court's authority but that the property may not be sold under other procedures during the pendency of this action.

    8.    Defendant Treasurer of Montgomery County, Ohio, is joined as a party because, as the local taxing authority, it may have a lien or claim an interest in the commercial real property described below and to place it on notice of this Court's jurisdiction over that property such that any local tax liens that have priority over federal tax liens under 26 U.S.C. § 6323(b)(6) will be satisfied in a judicial sale under this Court's authority but that the property may not be sold under other procedures during the pendency of this action.

    9.    The residential real property upon which the United States seeks to enforce its tax liens (the "Residential Real Property") is located at 4116 Springboro Road, Lebanon, Ohio

45036, has two parcels, and has a legal description as follows:

**Parcel 08-04-300-043:**

Situated in Warren County Ohio, in Clearcreek Township, part of the Southwest quarter Section 4, Town 3, Range 4, and being 28.429 acres cut out of an original 86.60 acre tract belonging to S. and R. Alexander as recorded in O.R. 909 p 205 and more particularly described as follows:

Beginning at a found P.K. Spike the Southwest corner Section 4, in the centerline of Springboro Road, the Northwest corner Bernadine Long Etal. (O.R.415 P 167), and Grantor's southwest corner the true point of beginning for the land herein described: Thence with the West line Section 4 along Grantor's line n5 18'E1392.60' to a found spike. Grantor's Northwest corner the Southwest corner K. Roman (D.B.512P210); Thence with Grantor's North line s82 20'E890.00' to a point; Thence on a new division line S5 18'W1392.60' to a point in Grantor's South line; Thence with Grantor's south line N02 20'W passing an iron pin at 860.00' 890.00' to the point of beginning containing 28.429 acres subject to all R/W, Restrictions, and easements of record in Warren County Courthouse.

This description based on a survey by Ballinger and Associated, James W. Ballinger in supervisory control, license No. 6854, done in Feb. 1994, and recorded in Vol. 90, P 29 of the tax map records.

SAVE AND EXCEPTING THEREFROM THE FOLLOWING REAL PROPERTY:

SITUATED IN WARREN COUNTY, OHIO, IN CLEARCREEK TOWNSHIP, BEING PART OF THE SOUTHWEST QUARTER OF SECTION 4, TOWN 3, RANGE 4, NORTH, HAVING FRONTAGE OF SPRINGBORO ROAD AND BEING 1.500 ACRES CUT OUT OF A 26.929 ACRE PARCEL MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER SECTION 4, GRANTOR'S SOUTHWEST CORNER, THE NORTHWEST CORNER CHALMER BRANDENBURG'S 82.28 ACRE TRACT (D.B. 452, P 119), A FOUND SPIKE IN THE CENTERLINE OF SPRINGBORO ROAD; THENCE WITH GRANTOR'S LINE N 5 18' E 1151.75' TO A SET SPIKE AND THE TRUE POINT OF BEGINNING FOR THE LAND HEREIN DESCRIBED; THENCE CONTINUING WITH SAID CENTERLINE N 5 18' E 240.85' TO A FOUND SPIKE GRANTOR'S NORTHWEST

CORNER, THE SOUTHWEST CORNER OF KEN AND
BONITA ROMAN'S 1.236 ACRE PARCEL (DB 512, P 210);
THENCE S 82 20' E WITH ROMAN'S LINE, PASSING A SET
IRON PIN AT 25.00' A TOTAL DISTANCE OF 271.52' TO A
SET IRON PIN; THENCE ON A NEW DIVISION LINE S 5 18'
W 240.85' TO A SET IRON PIN; THENCE CONTINUING N 82
20' W PASSING AN IRON PIN AT 246.25', A TOTAL
DISTANCE OF 271.52' TO THE POINT OF BEGINNING,
CONTAINING 1.5000 ACRES, SUBJECT TO ALL R/W,
RESTRICTIONS, AND EASEMENTS OF RECORD IN
WARREN COUNTY COURTHOUSE.

AND ALSO SAVE AND EXCEPTING THEREFROM THE
FOLLOWING REAL PROPERTY:

Situated in Warren County, Ohio, in Clearcreek Township, being
part of Southwest Quarter of Section 4, Town 3, Range 4, North,
having frontage on Springboro Road and being 1.500 acres cut out
of a larger 28.429 acre parcel more particularly described as
follows:

Beginning at the Southwest corner Section 4, Grantor's Southwest
corner, the Northwest corner Chalmer Brandenburg's 87.28 acre
tract (Deed Book 452, Page 119), a found spike in the centerline
Springboro Road; Thence with Grantor's line N 5° 10' E 910.90'
to a set spike the true point of beginning for the land herein
described; Thence continuing N 5° 18' E 240.85' to a set spike;
Thence on a new division line S 82° 20' E passing an iron pin at
25.00' a total difference of 271.52 to a set 1" iron pin; Thence
continuing on said division line S 5°18' W 240.85' to a set 1" iron
pin; Thence continuing N 82° 20'W passing an iron pin at 246.25'
a total distance of 271.52' to the point of beginning containing
1.500 acres subject to all Right of Ways, Restrictions, and
Easements of Record in Warren County Courthouse.

This legal description based on a survey by Ballinger and
Associates, done in January 1993, James W. Ballinger in
supervisory control License No. 6854.

AND ALSO SAVE AND EXCEPTING THEREFROM THE
FOLLOWING REAL PROPERTY:

Situated in the County of Warren in the State of Ohio and in the
Township of Clearcreek being part of Southwest Quarter of
Section 4, town 3, range 4, North, having frontage on Springboro
Road and being 1.5000 acres cut out of a larger 28.429 acre parcel
more particularly described as follows:

4

Beginning at the Southwest corner Section 4, Grantor's Southwest corner, the Northwest corner Chalmer Brandenburg's 87.28 acre tract (Deed Book 452, Page 119), a found spike in the centerline Springboro Road; Thence with Grantor's line N5° 18' E 406.66' to a set spike the true point of beginning for the land herein described; Thence continuing N 5° 18 E 203.34' to a set spike; Thence on a new division line 82° 20' E passing an iron pin at 25.00' a total difference of 321.62' to a set 1/2" iron pin; Thence continuing on said division line S5° 18' W 203.34' to a set 1/2 iron pin; Thence continuing N 82° 20' W passing an iron pin at 296.62', a total distance of 321.62' to the point of beginning containing 1.5000 acres subject to all Right of Ways, Restrictions, and Easements of Record in Warren County Courthouse.

This legal description based on a survey by Ballinger and Associates, done in January 1993, James W. Ballinger in supervisory control License No. 6854.

**Parcel 08-04-300-011:**

Situate in the Township of Clearcreek in the County of Warren and State of Ohio, and being part of the southwest quarter of Section 4, Town 3, Range 4-N, M.R.S. and more particularly described as follows:  Beginning at the Southwest corner of said Section 4; thence north along the West line said section and the center of the Lebanon and Springboro Road, N. 5 degrees 18' E. 21.10 chains to a point in the center of the aforesaid road; thence S. 82 degrees 20' E 41.32 chains to a point; thence S. 5 degrees W. 20.95 chains to a stone in the South line of said section; thence along the South Section line N. 82 degrees 20; W. 41.42 chains to the place of beginning, containing eighty-six and sixty hundredths (86.60) acres, more or less.  Subject to all legal highways.

Subject to all easements, conditions and restrictions of record.

Save and excepting therefrom the following described property:

Situated in Warren County Ohio, in Clearcreek Township, part of the Southwest quarter Section 4, Town 3, Range 4 and being 28.429 cut out of an original 86.60 acre tract belonging to S. and R. Alexander as recorded in O.R. 909 P 205 and more particularly described as follows:

Beginning at a found P.K. Spike the Southwest corner Section 4, in the centerline of Springboro Road, the Northwest corner Bernadine Long Etal. (O.R. 415 P 167), and Grantor's southwest corner the true point of beginning for the land herein described: Thence with

5

> the West line Section 4 along Grantor's line N5 18'E1392.60' to a
> found spike. Grantor's Northwest corner the Southwest corner K.
> Roman (D.B.512P210); Thence with Grantor's North line s82 20'
> E890.00' to a point; Thence on a new division line S5
> 18'W1392.60' to a point in Grantor's South line; Thence with
> Grantor's South line N82 20'W passing an iron pin at 860.00' 890'
> to the point of beginning containing 28.429 acres subject to all
> R/W, Restrictions, and easements of record in Warren County
> Courthouse.
>
> This description based on a survey by Ballinger and Associated,
> James W. Ballinger in supervisory control, license No. 6854, done
> in Feb. 1994, and recorded in Vol. 90, P 29 of the tax map records.

Meaning to describe, respectively, the parcel conveyed to Anna E. Alexander by general

warranty deed of Ruth Anne Alexander, Successor Trustee, dated April 17, 2007, and recorded

with the Warren County Recorder at Book 4438, Pages 946–48, on April 17, 2007; and the

parcel conveyed to Anna E. Alexander by general warranty deed of Ruth Anne Alexander,

married, dated April 17, 2007, and recorded with the Warren County Recorder at Book 4438,

Pages 949–50, on April 17, 2007.

10.     The commercial real property upon which the United States seeks to enforce its

tax liens (the "Commercial Real Property") is located at 15 Irongate Park Drive, also known as

15 Iron Gate Park Drive, Centerville, Ohio 45459, and has a legal description as follows:

> Situate in the City of Centerville, County of Montgomery and State
> of Ohio, and being a part of Lot Numbered 2 of the F.L. Arnold
> Plat (Corrective Plat) as re-recorded in Book 76, Page 20 in the
> Plat Records of Montgomery County, Ohio, and being a tract of
> land described as follows:
>
> Beginning at a point in the north line of said Lot 2, said point of
> beginning being located North 87 degrees 11 minutes East and
> 75.27 feet from the northwest corner of said Lot 2; thence with the
> north line of said Lot 2, North 87 degrees 11 minutes East for
> 90.00 feet; thence leaving said North line, South 3 degrees 22
> minutes 10 seconds East for 190.44 feet to a point in the south line
> of said Lot 2, said south line being the north line of Iron Gate Park
> Drive as recorded on said Arnold Plat; thence with the south line of
> said Lot 2 and the north line of said Iron Gate Park Drive, South 86

degrees 37 minutes 50 seconds West for 90.00 feet to a point
located North 86 degrees 37 minutes 50 seconds West for 7.00 feet
from an angle in the north line of said Iron Gate Park Drive; thence
leaving said line, North 3 degrees 22 minutes 10 seconds East for
191.31 feet to the point of beginning, containing 0.394 acres, more
or less.

Meaning to describe the property conveyed to Anna E. Alexander by general warranty deed of

Ruth Anne Alexander, Successor Trustee, dated April 17, 2007, and recorded with the

Montgomery County Recorder as Deed 07-031987, on April 17, 2007.

### COUNT ONE
**(Claim against Stanley L. Alexander and Ruth A. Alexander
to Reduce Income Tax Liabilities to Judgment)**

11.    A delegate of the Secretary of the Treasury made joint assessments against

Stanley L. Alexander and Ruth A. Alexander for income taxes and accuracy-related penalties for

the periods, on the dates, and in the amounts described below.  These liabilities have balances

due as of January 29, 2024, including assessed and accrued late-filing penalties under 26 U.S.C.

§ 6651, costs, and statutory interest, and after applying any abatements, payments, and credits, as

follows:

| Tax Period Ending | Assessment Date | Assessment Type | Amount Assessed | Balance Due 1/29/2024 |
|---|---|---|---|---|
| 12/31/1999 | 04/09/2014 | Tax | $129,836.00 | $574,666.37 |
| | 04/09/2014 | Late Filing Penalty | $25,869.80 | |
| | 04/09/2014 | Accuracy Penalty (IRC 6662) | $25,967.20 | |
| | 04/09/2014 | Interest | $204,648.22 | |
| 12/31/2000 | 04/09/2014 | Tax | $137,314.00 | $392,579.22 |
| | 04/09/2014 | Late Filing Penalty | $34,328.50 | |
| | 04/09/2014 | Accuracy Penalty (IRC 6662) | $27,462.80 | |
| | 04/09/2014 | Interest | $188,075.49 | |
| 12/31/2001 | 04/09/2014 | Tax | $179,462.00 | $760,394.34 |
| | 04/09/2014 | Late Filing Penalty | $44,014.50 | |
| | 04/09/2014 | | $35,892.40 | |

7

| | | Accuracy Penalty (IRC 6662) | $211,279.08 | |
| | 04/09/2014 | Interest | | |
| 12/31/2002 | 04/09/2014 | Tax | $211,390.00 | $245,373.21 |
| | 04/09/2014 | Late Filing Penalty | $52,772.25 | |
| | 04/09/2014 | Accuracy Penalty (IRC 6662) | $42,217.80 | |
| | 04/09/2014 | Interest | $218,493.46 | |
| | 10/13/2014 | Interest | $11,671.44 | |
| **Total** | | | | **$1,973,013.14** |

12. Notice of the liabilities described in paragraph 11 was given to, and payment demanded from, Stanley L. Alexander and Ruth A. Alexander.

13. Despite proper notice and demand, Stanley L. Alexander and Ruth A. Alexander failed, neglected, or refused to fully pay the liabilities, and after the application of all abatements, payments, and credits, they remain liable, jointly and severally, to the United States in the amount of $1,973,013.14, plus statutory additions accruing from and after January 29, 2024.

14. On April 28, 2006, Stanley L. Alexander and Ruth A. Alexander filed petitions with the Tax Court to challenge the notices of deficiency issued to them by the Internal Revenue Service for their joint 1999, 2000, 2001, and 2002 income tax liabilities, as well as Stanley L. Alexander's 2003 income tax liabilities.

15. In the Tax Court litigation, Stanley L. Alexander and Ruth A. Alexander alleged that the Internal Revenue Service had not timely assessed income tax deficiencies against them for the years 1999, 2000, and 2001. The Tax Court held that the Internal Revenue Service had timely assessed additional income tax deficiencies against Stanley L. Alexander and Ruth A. Alexander for the years 1999, 2000, and 2001. (**Exhibit A**, *Alexander v. C.I.R.*, T.C. Memo. 2013-203, at 34–35.) The Tax Court also determined the amount of their income tax deficiencies and their liability for accuracy-related penalties for those years (*see id.* at 9-10), which formed

the basis of the Internal Revenue Service's assessments set forth in paragraph 11, above.

**COUNT TWO**
**(Claim against Stanley L. Alexander to Reduce Income Tax Liabilities to Judgment)**

16.     A delegate of the Secretary of the Treasury made assessments against Stanley L. Alexander for income taxes and fraud penalties for the periods, on the dates, and in the amounts described below.  These liabilities have balances due as of January 29, 2024, including assessed and accrued late-filing and late-payment penalties under 26 U.S.C. § 6651 or penalties for failure to make estimated tax payments under 26 U.S.C. § 6654, costs, and statutory interest, and after applying any abatements, payments, and credits, as follows:

| Tax Period Ending | Assessment Date | Assessment Type | Amount Assessed | Balance Due 1/29/2024 |
|---|---|---|---|---|
| 12/31/2003 | 04/17/2014 | Tax | $192,441.00 | $603,993.42 |
| | 04/17/2014 | Late Filing Penalty | $38,990.48 | |
| | 04/17/2014 | Late Payment Penalty | $43,322.75 | |
| | 04/17/2014 | Estimated Tax Penalty | $4,416.23 | |
| | 04/17/2014 | Interest | $166,248.49 | |
| 12/31/2004 | 10/12/2015 | Tax | $167,790.00 | $796,333.94 |
| | 10/12/2015 | Late Filing Penalty | $145,162.36 | |
| | 10/12/2015 | Late Payment Penalty | $41,947.50 | |
| | 10/12/2015 | Estimated Tax Penalty | $764.95 | |
| | 10/12/2015 | Interest | $190,934.72 | |
| 12/31/2005 | 10/12/2015 | Tax | $319,738.00 | $937,104.02 |
| | 10/12/2015 | Late Payment Penalty | $55,464.00 | |
| | 10/12/2015 | Estimated Tax Penalty | $8,462.75 | |
| | 10/12/2015 | Interest | $193,928.37 | |
| | 10/12/2015 | Miscellaneous Penalty | $160,845.60 | |
| 12/31/2006 | 10/12/2015 | Tax | $276,738.00 | $757,434.39 |
| | 10/12/2015 | Late Payment Penalty | $47,988.00 | |
| | 10/12/2015 | Estimated Tax Penalty | $8,638.12 | |
| | 10/12/2015 | Interest | $130,000.33 | |
| | 10/12/2015 | Miscellaneous Penalty | $139,165.20 | |
| 12/31/2007 | 10/12/2015 | Tax | $269,234.00 | $714,539.62 |
| | 10/12/2015 | Late Payment Penalty | $48,269.00 | |
| | 10/12/2015 | Estimated Tax Penalty | $8,402.28 | |

|  | 10/12/2015 | Interest | $98,695.61 |  |
|  | 10/12/2015 | Miscellaneous Penalty | $139,980.10 |  |
| 12/31/2008 | 10/12/2015 | Tax | $212,288.00 | $594,719.92 |
|  | 10/12/2015 | Late Payment Penalty | $42,236.50 |  |
|  | 10/12/2015 | Estimated Tax Penalty | $5,274.57 |  |
|  | 10/12/2015 | Interest | $67,577.40 |  |
|  | 10/12/2015 | Miscellaneous Penalty | $122,485.85 |  |
| 12/31/2009 | 10/12/2015 | Tax | $227,311.00 | $575,889.41 |
|  | 10/12/2015 | Late Payment Penalty | $42,515.75 |  |
|  | 10/12/2015 | Estimated Tax Penalty | $3,919.39 |  |
|  | 10/12/2015 | Interest | $53,854.93 |  |
|  | 10/12/2015 | Miscellaneous Penalty | $123,295.68 |  |
| 12/31/2010 | 10/12/2015 | Tax | $167,545.00 | $336,614.19 |
|  | 10/12/2015 | Late Payment Penalty | $25,717.25 |  |
|  | 10/12/2015 | Estimated Tax Penalty | $2,052.00 |  |
|  | 10/12/2015 | Interest | $24,874.08 |  |
|  | 10/12/2015 | Miscellaneous Penalty | $74,580.02 |  |
| 12/31/2011 | 10/12/2015 | Tax | $155,921.00 | $413,795.69 |
|  | 10/12/2015 | Late Payment Penalty | $27,496.77 |  |
|  | 10/12/2015 | Estimated Tax Penalty | $2,537.31 |  |
|  | 10/12/2015 | Interest | $23,369.23 |  |
|  | 10/12/2015 | Miscellaneous Penalty | $94,929.33 |  |
| **Total** |  |  |  | **$5,730,424.60** |

17.     The "Miscellaneous Penalt[ies]" described in paragraph 16, above, are penalties asserted under 26 U.S.C. § 6651(f) resulting from Stanley L. Alexander's fraudulent failure to file required federal income tax returns for tax years 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

18.     Stanley L. Alexander had knowledge of federal income tax return filing requirements because (1) he purchased tax preparation software products including TurboTax, (2) his attorney had informed Alexander of his return filing requirement, (3) Alexander filed extensions of the deadline for filing his federal income tax returns, and (4) Alexander personally prepared joint income tax returns for himself and Mrs. Alexander for tax years 1999-2002.

19.     Prior to failing to file his federal income tax returns for years 2004-2011, he failed

to file his 2003 federal income tax return.  Alexander became delinquent when the IRS examined his federal income tax liabilities for years 1999-2003.  Alexander operated under the assumption that the IRS could not examine him if he did not file returns, so he stopped filing returns.

20.  Stanley L. Alexander attempted to hide assets from creditors and other interested parties through the use of nominees.  With respect to the Residential Real Property, after he originally purchased it in his name, he attempted to keep this property out of the reach of creditors by deeding it to relatives and/or trusts.  With respect to the Commercial Real Property, after he originally purchased it in his name, he deeded the property to his wife, who subsequently deeded the property to Mrs. Alexander's sister, Sarah E. Martens, who served as a trustee of the Ruth Anne Alexander Revocable Trust ("RAART"), a trust set up in his wife's name.  Mrs. Alexander then removed Martens as trustee and appointed herself as the trustee and on the same day deeded the property to the Alexanders' daughter, Anna E. Alexander.

21.  Stanley L. Alexander used entities (trusts and limited liability companies) to receive repatriated funds from offshore accounts.  Stanley L. Alexander enjoyed the benefits of these accounts, even if they were not in his name, by acquiring assets and paying for personal living expenses.

22.  Stanley L. Alexander participated in a known tax promotion scheme and continued to associate with known promoters of the scheme.  Specifically, between December 1996 and approximately September 2013, Alexander participated in an "offshore employee leasing" arrangement where he used offshore accounts to hide the vast majority of his income from his plastic surgery practice.  Between 1987 and 2015, Stanley L. Alexander operated his own plastic and reconstructive surgery practice, at which he was the only doctor.  In October 1996, Stanley L. Alexander and Ruth A. Alexander traveled to the Bahamas and attended a

seminar that included a presentation on offshore employee leasing transactions.  Stanley L. Alexander's employee leasing transaction worked as follows:

     a.   Stanley L. Alexander signed a contract giving a foreign employee leasing company the exclusive right to lease his services to an employer for wages and retirement compensation.

     b.   The offshore company assigned the right to lease Stanley L. Alexander's services to a domestic employee leasing company.

     c.   The domestic employee leasing company signed a contract to allow Stanley L. Alexander's plastic surgery practice to use his services for a fee.

     d.   Stanley L. Alexander's plastic surgery practice sent funds (representing Stanley L. Alexander's income for the year) to the domestic employee leasing company, which paid a portion of the funds to Stanley L. Alexander as wages, withheld a fee, and sent the rest of the funds to the offshore employee leasing company.

     e.   The offshore employee leasing company withheld a fee from the funds it received, and sent the remainder to other offshore entities which, after withholding further fees, eventually placed the funds in offshore accounts for Stanley L. Alexander.

23.     The Tax Court has determined that Stanley L. Alexander's offshore employee leasing transaction was a sham that had no economic substance beyond tax avoidance.

24.     The foreign accounts opened for the benefit of Stanley L. Alexander were opened in the name of nominees.  He used RAART to receive repatriated funds so that he could claim that these funds were not for his benefit.  However, these funds were used to acquire assets for

his and his family's use and pay for personal living expenses.  He also received repatriated funds through fictitious loans.

25.     Stanley L. Alexander was able to access and control the money that he placed abroad.  For example, he repatriated $596,169.38 from Associated Enterprises, Ltd., through RAART.  Stanley L. Alexander concealed the source of the repatriated money by arranging for the repatriation to occur in the form of a sham mortgage executed on December 28, 2007, by the court-appointed guardian for his then-minor daughter, Anna E. Alexander.  Stanley L. Alexander also was able to give, and at least once in 1998 did give, investment directives regarding the foreign accounts in which his money was held offshore.

26.     Through the offshore employee leasing tax avoidance scheme, Stanley L. Alexander moved abroad $342,254, $354,216, $433,500, $548,100, and $490,000 in 1999, 2000, 2001, 2002, and 2003, respectively, for a total of $2,168,070 over those five years.  (**Exhibit A**, at 35–37.)

27.     Through the offshore employee leasing tax avoidance scheme, Stanley L. Alexander moved abroad $545,000, $660,000, $691,000, $385,000, $199,400, $290,656, $303,000, and $136,000, in 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011, respectively for a total of $3,210,056 over those eight years.

28.     Stanley L. Alexander failed to cooperate with the IRS during its examination and did not timely provide records.  Also, he claimed that he did not have access to any offshore records.

29.     On or about July 8, 2015, Stanley L. Alexander's attorney-in-fact, Wayne Essex, signed IRS Forms 4549 Income Tax Examination Changes regarding Alexander's federal income tax liabilities for years 2004-2011, agreeing that Alexander "do[es] not wish to exercise

[his] appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, [he] give[s] [his] consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law."

30.     Notice of the liabilities described in paragraph 16 was given to, and payment demanded from, Stanley L. Alexander.

31.     Despite proper notice and demand, Stanley L. Alexander failed, neglected, or refused to fully pay the liabilities, and after the application of all abatements, payments, and credits, he remains liable to the United States in the amount of $5,730,424.60, plus statutory additions accruing from and after January 29, 2024.

32.     The Tax Court determined the amount of Stanley L. Alexander's income tax deficiency for the 2003 tax (**Exhibit A**, *Alexander v. Comm'r*, T.C. Memo 2013-203, at 9), which formed the basis of the IRS's assessment for 2003 set forth in paragraph 16 above.

## COUNT THREE
**(Claim against Stanley L. Alexander, Ruth A. Alexander, Anna E. Alexander, Associated Enterprises, Ltd., the State of Ohio, and Treasurer of Warren County, Ohio, to Enforce Federal Tax Liens against Residential Real Property)**

33.     The United States incorporates by reference paragraphs 11 through 32 as if specifically realleged herein.

34.     Stanley L. Alexander has exercised dominion and control over the Residential Real Property, has treated the property as if it belongs to him, and has enjoyed the benefits and shouldered the burdens of ownership of the property, at all times since March 20, 1989, the date on which Stanley L. Alexander and his then-wife Nathalie Louise Alexander acquired the property by bidding $250,000 at a sheriff's auction. Stanley L. Alexander and Nathalie Louise Alexander took title to the property via a Sheriff's Deed on Order of Sale, recorded with the

Warren County Recorder at O.R. 498, Pages 514–15, on April 19, 1989.

35.     Stanley L. Alexander became the sole owner of the Residential Real Property when, following their divorce, Nathalie Louise Alexander transferred her interest in the property via quitclaim deed to Stanley L. Alexander, on November 11, 1991, recorded with the Warren County Recorder at Vol. 677, Pages 17–18, on December 16, 1991.

36.     Over the course of approximately 14 years, Stanley L. Alexander and Ruth A. Alexander recorded a series of deeds purporting to transfer record ownership of the Residential Real Property:

  a.  First, for no consideration, Stanley L. Alexander transferred record title to the property by general warranty deed to Ruth A. Alexander on January 4, 1993, recorded with the Warren County Recorder at Book 909, Pages 205–06, on October 6, 1993.

  b.  Second, Ruth A. Alexander divided the property into two parcels via a general warranty deed executed by and to herself on June 9, 1994, recorded with the Warren County Recorder at Book 1008, Pages 169–70, on June 9, 1994.

  c.  Third, for no consideration, Ruth A. Alexander transferred her interest in the smaller parcel by quitclaim deed to her sister Sarah E. Martens, Successor Trustee of the Ruth Anne Alexander Revocable Trust, on June 13, 1996, recorded with the Warren County Recorder at Book 1243, Pages 155–57, on June 26, 1996.

  d.  Fourth, Sarah E. Martens, as Successor Trustee of RAART, transferred by general warranty deed to third parties three 1.5-acre lots within the smaller parcel of the Residential Real Property.

e. Fifth, for no consideration, Ruth A. Alexander, married, and as Successor
Trustee of RAART, transferred record title to both parcels of the property by
general warranty deeds to Anna E. Alexander, who at the time was 11 years
old, on April 17, 2007, recorded with the Warren County Recorder at Book
4438, Pages 946–50, on April 17, 2007.

37. On information and belief, Stanley L. Alexander, either directly or indirectly
through alter egos or nominees including Ruth A. Alexander, RAART, and Anna E. Alexander,
paid all or substantially all costs associated with maintaining the Residential Real Property since
he acquired it in 1989.

38. Because Stanley L. Alexander and Ruth A. Alexander neglected, refused, or
failed to pay the liabilities described in paragraphs 11 and 16 after notice and demand, federal
tax liens arose pursuant to 26 U.S.C. §§ 6321 and 6322 on the dates of the assessments and
attached to the Residential Real Property.

39. Notices of Federal Tax Lien ("NFTL") were filed with the County Recorder of
Warren County, Ohio, in accordance with 26 U.S.C. § 6323(f), as follows:

| Type of Tax | Tax Periods Ending | Date NFTL Filed |
|---|---|---|
| Income (joint) | 12/31/1999; 12/31/2000; 12/31/2001 | 06/24/2014; 6/26/2023 (re-file); 7/21/2023 (re-file) |
| Income (joint) | 12/31/1999; 12/31/2000; 12/31/2001; 12/31/2002 | 10/08/2014; 6/26/2023 (re-file) |
| Income (Stanley Alexander) | 12/31/2003 | 6/24/2014; 10/8/2014; 12/17/2014; 3/20/2015 (corrected); 6/26/2023 (re-file); 6/26/2023 (re-file); 6/26/2023 (re-file); |

| | | 6/26/2023 (re-file) |
|---|---|---|
| Income (Stanley Alexander) | 12/31/2004; 12/31/2005; 12/31/2006; 12/31/2007; 12/31/2008; 12/31/2009; 12/31/2010; 12/31/2011 | 03/01/2016 |
| Income (nominee) | 12/31/1999; 12/31/2000; 12/31/2001; 12/31/2002; 12/31/2003 | 12/17/2014; 6/26/2023 (re-file) |

40.     When the federal tax liens arose, the federal tax liens attached to the Residential Real Property because Anna E. Alexander held record title to the property merely as the alter ego or nominee of Stanley L. Alexander and Ruth A. Alexander.  As explained below, Anna E. Alexander did not give adequate consideration in exchange for record ownership of the Residential Real Property, which she acquired when she was 11 years old.  There is a close relationship between Stanley L. Alexander, Ruth A. Alexander, and Anna E. Alexander, because Anna E. Alexander is Stanley L. Alexander and Ruth A. Alexander's only child.  At the time when Stanley L. Alexander and Ruth A. Alexander placed record title to the Residential Real Property (and to nearly all of their other assets) in the name of Anna E. Alexander, they were litigating their tax liabilities for tax years 1999 through 2003 with the Internal Revenue Service in Tax Court.

41.     Alternatively, the transfer of the two parcels of the Residential Real Property to Anna E. Alexander was a fraudulent transfer under Ohio law, which should be avoided in favor of the United States, a creditor of Stanley L. Alexander and Ruth A. Alexander.  The transfer was made with actual intent to hinder, delay, or defraud the United States as a creditor of Stanley L. Alexander and Ruth A. Alexander, within the meaning of Ohio Rev. Code Ann. § 1336.04, as evidenced by facts including the following:

        a.   The transfer was to an insider, the Alexanders' only child.

17

b.  Stanley L. Alexander and Ruth A. Alexander retained control of the Residential Real Property, which remained their marital home and the place where their then-minor daughter lived with them.  They continue to reside at the Residential Real Property, while their now-adult daughter has lived elsewhere.

c.  When the transfer of the Residential Real Property occurred, the Internal Revenue Service had audited Stanley L. Alexander and Ruth A. Alexander's income taxes for the years 1999 through 2003, and they were challenging the resulting income tax deficiencies in Tax Court.

d.  When the transfer of the Residential Real Property occurred, Stanley L. Alexander was continuing to accrue substantial federal income tax debts through the tax evasion scheme described above in paragraph 22.

e.  The transfer of the Residential Real Property was made at the same time that Stanley L. Alexander and Ruth A. Alexander transferred all or substantially all of their assets, including the Commercial Real Property, to Anna E. Alexander, who was 11 years old at the time.

f.  The transfers of the Residential Real Property, the Commercial Real Property, and substantially all of Stanley L. Alexander and Ruth A. Alexander's remaining assets to their then-minor daughter rendered them insolvent.

g.  Stanley L. Alexander concealed assets in multiple ways: (1) by transferring money to offshore accounts, as described above in paragraph 22; (2) by repatriating $596,169.38 from those offshore accounts and disguising the repatriation in the form of a sham mortgage executed on December 28, 2007,

18

shortly after the transfer of the Residential Real Property occurred; and (3) by not having any bank accounts in his own name and instead operating through accounts in the name of RAART, Anna E. Alexander, Earl C. Anthony Motors, Limited, and potentially other alter egos or nominees.

h. Anna E. Alexander provided inadequate consideration in exchange for substantially all of her parents' assets. The transfer was purported to have occurred in exchange for Anna E. Alexander's promise, made via a guardian ad litem (Jessie Alexander, Stanley L. Alexander's mother) in probate court, to make payments to Ruth A. Alexander in the future pursuant to a private annuity agreement. According to the form of the agreement submitted with the motion to purchase real estate in exchange for private annuity obligation, filed in Warren County Probate Court on April 11, 2007, Anna E. Alexander's payment obligation was to begin fourteen years later, on August 30, 2021, when Ruth A. Alexander was to turn age 70 and Anna E. Alexander would be 25 years old. Anna E. Alexander's payment obligation would be unsecured and would terminate upon Ruth A. Alexander's death. According to the form of the agreement, the then-current fair market value of the real and personal property transferred was $2,603,625. The form of the agreement does not specify the dollar amount of the periodic payments to be made by Anna E. Alexander, but it does state that the payments are payable on an annual basis, and an interest factor of 5.6% would be included in the payment obligation. According to an April 10, 2007, attorney letter submitted with the motion papers, "[t]he transfer immediately removes the property from the annuitant's

19

estate so that it is not reachable by the transferor's creditors." The motion does not mention the 1999-2003 federal income tax liabilities of Stanley L. Alexander and Ruth A. Alexander that were being litigated at the time in U.S. Tax Court. On April 17, 2007, the probate court entered an order granting authority to enter into the transaction, "provided, however, that all documents evidencing the consummation of the proposed transaction shall be filed with the Court with a Transaction Report, within 30 days following the date of this Order." No such documents were filed with the probate court.

42. Alternatively, the transfer of the Residential Real Property to Anna E. Alexander was a fraudulent transfer under Ohio law, which should be avoided in favor of the United States, a creditor of Stanley L. Alexander and Ruth A. Alexander, because the transfer was made without receiving reasonably equivalent value in exchange. Anna E. Alexander provided inadequate consideration for the receipt of substantially all of her parents' assets, including the valuable Residential Real Property. At the time of the transfer, Stanley L. Alexander and Ruth A. Alexander intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due, specifically federal income tax debts for the years 1999 through 2003 and for each year thereafter until Stanley L. Alexander stopped participating in the tax evasion scheme described above in paragraph 22 in approximately 2013.

43. The United States is entitled to enforce the federal tax liens described in paragraph 38 against the Residential Real Property pursuant to 26 U.S.C. § 7403 and to have the entire Residential Real Property sold in a judicial sale (including by a receiver if requested by the United States), free and clear of all claims, liens, or interests of the parties, including any rights of redemption, with the proceeds of the sale distributed: first, to pay the costs of sale, including

any expenses incurred to secure and maintain the Residential Real Property; second, to Treasurer of Warren County, Ohio, to pay any real estate taxes due and owing that are entitled to priority under 26 U.S.C. § 6323(b)(6); third, to the United States to pay the liabilities described above, except to the extent that the Court determines that another party has a superior right, title, or interest.

### COUNT FOUR
**(Claim against Stanley L. Alexander, Ruth A. Alexander, Anna E. Alexander, the State of Ohio, and Montgomery County, Ohio, to Enforce Federal Tax Liens against Commercial Real Property)**

44.     The United States incorporates by reference paragraphs 11 through 43 as if specifically realleged herein.

45.     Stanley L. Alexander has exercised dominion and control over the Commercial Real Property, has treated the property as if it belongs to him, and has enjoyed the benefits and shouldered the burdens of ownership of the property, at all times since August 30, 1990, the date on which he acquired the Commercial Real Property from Duane A. Thompson & Associates, Inc., by Deed 90-0474, recorded with the Montgomery County Recorder on August 31, 1990.

46.     To finance the purchase of the Commercial Property, on August 30, 1990, Stanley L. Alexander took out a mortgage of $140,000.00 on the property with Society Bank, which he finished repaying on or about December 18, 2001.

47.     Stanley L. Alexander operated his plastic surgery practice out of the Commercial Real Property from 1990 until his retirement in or around 2015.

48.     At all times since August 31, 1990, Stanley L. Alexander, either directly or indirectly, has paid all bills associated with the Commercial Real Property.

49.     Over the course of 14 years, Stanley L. Alexander and Ruth A. Alexander recorded a series of deeds purporting to transfer ownership of the Commercial Real Property:

a. First, for no consideration, Stanley L. Alexander transferred record title to the property by general warranty deed to Ruth A. Alexander via Deed 93-0633 on January 4, 1993, recorded with the Montgomery County Recorder on October 5, 1993.

b. Second, for no consideration, Ruth A. Alexander transferred her interest in the property by quitclaim deed to RAART, care of the then-trustee, her sister Sarah E. Martens, via Deed 96-0398 on June 5, 1996, recorded with the Montgomery County Recorder on June 17, 1996.

c. Third, for inadequate consideration through the private annuity contract described above, Ruth A. Alexander as Successor Trustee of RAART transferred record title by general warranty deed to Anna E. Alexander, who at the time was 11 years old, via Deed 07-031987 on April 17, 2007, recorded with the Montgomery County Recorder on April 17, 2007.

50.     Because Stanley L. Alexander and Ruth A. Alexander neglected, refused, or failed to pay the liabilities described in paragraphs 11 and 16 after notice and demand, federal tax liens arose pursuant to 26 U.S.C. §§ 6321 and 6322 on the dates of the assessments and attached to the Commercial Real Property.

51.     NFTLs were filed with the County Recorder of Montgomery County, Ohio, in accordance with 26 U.S.C. § 6323(f), as follows:

| Type of Tax | Tax Periods Ending | Date NFTL Filed |
|---|---|---|
| Income (joint) | 12/31/1999; 12/31/2000; 12/31/2001; 12/31/2002 | 10/08/2014; 6/21/2023 (re-file) |
| Income (Stanley Alexander) | 12/31/2003 | 10/8/2014; 12/16/2014; 3/17/2015 (corrected); |

| | | 3/17/2015 (corrected); 6/21/2023 (re-file); 6/21/2023 (re-file); 6/21/2023 (re-file); 6/21/2023 (re-file) |
|---|---|---|
| Income (nominee) | 12/31/1999; 12/31/2000; 12/31/2001; 12/31/2002; 12/31/2003 | 12/16/2014; 6/21/2023 (re-file) |

52.     When the federal tax liens arose, the federal tax liens attached to the Commercial Real Property because Anna E. Alexander held record title to the property merely as the alter ego or nominee of Stanley L. Alexander and Ruth A. Alexander.  As explained below, Anna E. Alexander did not give adequate consideration in exchange for record ownership of the Commercial Real Property, which she acquired when she was 11 years old.  There is a close relationship between Stanley L. Alexander, Ruth A. Alexander, and Anna E. Alexander because Anna E. Alexander is Stanley L. Alexander and Ruth A. Alexander's only child.  At the time when Stanley L. Alexander and Ruth A. Alexander placed record title to the Commercial Real Property (and to nearly all of their other assets) in the name of Anna E. Alexander, they were litigating their tax liabilities for tax years 1999 through 2003 with the Internal Revenue Service in Tax Court.

53.     Alternatively, the transfer of the Commercial Real Property to Anna E. Alexander was a fraudulent transfer under Ohio law, which should be avoided in favor of the United States, a creditor of Stanley L. Alexander and Ruth A. Alexander.  The transfer was made with actual intent to hinder, delay, or defraud the United States as a creditor of Stanley L. Alexander and Ruth A. Alexander, within the meaning of Ohio Rev. Code Ann. § 1336.04, as evidenced by facts including the following:

    a.  The transfers were to an insider, the Alexanders' only child.

b.  Stanley L. Alexander retained control of the Commercial Real Property, which remained the place where he operated his plastic surgery practice until his retirement in approximately 2015.

c.  When the transfer of the Commercial Real Property occurred, the Internal Revenue Service had audited Stanley L. Alexander and Ruth A. Alexander's income taxes for the years 1999 through 2003, and they were challenging the resulting income tax deficiencies in Tax Court.

d.  When the transfer of the Commercial Real Property occurred, Stanley L. Alexander was continuing to accrue substantial federal income tax debts through the tax evasion scheme described above in paragraph 22.

e.  The transfer of the Commercial Real Property was made at the same time that Stanley L. Alexander and Ruth A. Alexander transferred all or substantially all of their assets, including the Residential Real Property, to Anna E. Alexander, who was 11 years old at the time.

f.  The transfers of the Residential Real Property, the Commercial Real Property, and substantially all of Stanley L. Alexander and Ruth A. Alexander's remaining assets to their then-minor daughter rendered them insolvent.

g.  Stanley L. Alexander concealed assets in multiple ways: (1) by transferring money to offshore accounts, as described below in Count Five; (2) by repatriating $596,169.38 from those offshore accounts and disguising the repatriation in the form of a sham mortgage executed on December 28, 2007, shortly after the transfer of the Residential Real Property occurred; and (3) by not having any bank accounts in his own name and instead operating through

accounts in the name of RAART, Anna E. Alexander, Earl C. Anthony
Motors, Limited, and potentially other alter egos or nominees.

h. Anna E. Alexander provided inadequate consideration in exchange for
substantially all of her parents' assets. The transfer was purported to have
occurred in exchange for Anna E. Alexander's promise, made via a guardian
ad litem (Jessie Alexander, Stanley L. Alexander's mother) in probate court,
to make payments to Ruth A. Alexander in the future pursuant to a private
annuity agreement. According to the form of the agreement submitted with
the motion to purchase real estate in exchange for private annuity obligation,
filed in Warren County Probate Court on April 11, 2007, Anna E. Alexander's
payment obligation was to begin fourteen years later, on August 30, 2021,
when Ruth A. Alexander was to turn age 70 and Anna E. Alexander would be
25 years old. Anna E. Alexander's payment obligation would be unsecured
and would terminate upon Ruth A. Alexander's death. According to the form
of the agreement, the then-current fair market value of the real and personal
property transferred was $2,603,625. The form of the agreement does not
specify the dollar amount of the periodic payments to be made by Anna E.
Alexander, but it does state that the payments are payable on an annual basis,
and an interest factor of 5.6% would be included in the payment obligation.
According to an April 10, 2007, attorney letter submitted with the motion
papers, "[t]he transfer immediately removes the property from the annuitant's
estate so that it is not reachable by the transferor's creditors." The motion
does not mention the 1999-2003 federal income tax liabilities of Stanley L.

Alexander and Ruth A. Alexander that were being litigated at the time in U.S. Tax Court.  On April 17, 2007, the probate court entered an order granting authority to enter into the transaction, "provided, however, that all documents evidencing the consummation of the proposed transaction shall be filed with the Court with a Transaction Report, within 30 days following the date of this Order."  No such documents were filed with the probate court.

54.     Alternatively, the transfer of the Commercial Real Property to Anna E. Alexander was a fraudulent transfer under Ohio law, which should be avoided in favor of the United States, a creditor of Stanley L. Alexander and Ruth A. Alexander, because the transfer was made without receiving reasonably equivalent value in exchange.  Anna E. Alexander provided inadequate consideration for the receipt of substantially all of her parents' assets, including the valuable Commercial Real Property.  At the time of the transfer, Stanley L. Alexander and Ruth A. Alexander intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due, specifically federal income tax debts for the years 1999 through 2003 and for each year thereafter until Stanley L. Alexander stopped participating in the tax evasion scheme described above in paragraph 22 in approximately 2013.

55.     The United States is entitled to enforce the federal tax liens described in paragraph 50 against the Commercial Real Property pursuant to 26 U.S.C. § 7403 and to have the entire Commercial Real Property sold in a judicial sale (including by a receiver if requested by the United States), free and clear of all claims, liens, or interests of the parties, including any rights of redemption, with the proceeds of the sale distributed: first, to pay the costs of sale, including any expenses incurred to secure and maintain the Commercial Real Property; second, to Treasurer of Montgomery County, Ohio, to pay any real estate taxes due and owing that are

entitled to priority under 26 U.S.C. § 6323(b)(6); third, to the United States to pay the liabilities described above, except to the extent that the Court determines that another party has a superior right, title, or interest.

WHEREFORE, the plaintiff United States of America requests the following relief:

A.    Judgment against the defendants Stanley L. Alexander and Ruth A. Alexander, jointly and severally, for income tax liabilities for the periods ending December 31, 1999, 2000, 2001, and 2002, in the amount of $1,973,013.14, plus statutory additions and interest accruing from and after January 29, 2024, including interest pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c);

B.    Judgment against the defendant Stanley L. Alexander for income tax liabilities for the periods ending December 31, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2011, in the amount of $5,730,424.60, plus statutory additions and interest accruing from and after January 29, 2024, including interest pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c);

C.    A determination that the United States has valid and subsisting federal tax liens under U.S.C. §§ 6321 and 6322 securing the liabilities described in paragraphs A and B on the Residential Real Property and the Commercial Real Property;

D.    An order enforcing the federal tax liens securing the liabilities described above pursuant to 26 U.S.C. § 7403 against the Residential Real Property by ordering the sale of the entire Residential Real Property in a judicial sale (including by a receiver if requested by the United States), free and clear of all rights, titles, or interests of the parties, including any rights of redemption, with the proceeds of the sale distributed: first, to pay the costs of the sale, including any expenses incurred to secure and maintain the Residential Real Property; second, to defendant

Treasurer of Warren County, Ohio, to pay any real estate taxes due and owing that are entitled to priority under 26 U.S.C. § 6323(b)(6); third, to the plaintiff United States to pay the liabilities described in paragraphs A and B, except to the extent that the Court determines that another party has a superior claim, lien, or interest;

      E.      An order enforcing the federal tax liens securing the liabilities described above pursuant to 26 U.S.C. § 7403 against the Commercial Real Property by ordering the sale of the entire Commercial Real Property in a judicial sale (including by a receiver if requested by the United States), free and clear of all rights, titles, or interests of the parties, including any rights of redemption, with the proceeds of the sale distributed: first, to pay the costs of the sale, including any expenses incurred to secure and maintain the Commercial Real Property; second, to defendant Treasurer of Montgomery County, Ohio, to pay any real estate taxes due and owing that are entitled to priority under 26 U.S.C. § 6323(b)(6); third, to the plaintiff United States to pay the liabilities described in paragraphs A and B, except to the extent that the Court determines that another party has a superior claim, lien, or interest; and

      F.      The United States shall recover its costs, and be awarded such other and further relief as the Court determines is just and proper.

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice


*/s/ Philip L. Bednar*
PHILIP L. BEDNAR (WA Bar No. 41304)
LEE SEITZ (OH Bar No. 98142)
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-307-6415 (v) (plb)
202-307-6580 (ls)
202-514-5238 (f)
Philip.L.Bednar@usdoj.gov
Lee.Seitz@usdoj.gov